Haby KANE, Petitioner,

v.

Alberto R. GONZALES, Attorney General, Respondent.

No. 04–72750.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 20, 2006.*

Filed Nov. 7, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Edward W. Pilot, Esq., Edward W. Pilot, APC, Beverly Hills, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Papu Sandhu, Esq., Aviva L. Poczter, Esq., Dirk C. Phillips, DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: FISHER and CALLAHAN, Circuit Judges, and COLLINS, District Judge.**

## MEMORANDUM ***

Haby Kane, a Mauritanian national, petitions for review of a Board of Immigration Appeals (BIA) decision that denied asylum, withholding of removal and relief under the United Nations Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(b) and review the BIA's denial for substantial evidence. Where, as here, the BIA adopts the Immigration Judge's (IJ) credibility determination, we review directly the IJ's reasons for finding the applicant not credible. See *Bandari v. INS,* 227 F.3d 1160, 1165 (9th Cir.2000). We hold that the IJ's adverse credibility finding is supported by substantial evidence and thus deny Kane's petition for review. Because the parties are familiar with the facts we do not recite them in detail.

The IJ found Kane not to be a credible witness because Kane was evasive and unable or unwilling to answer direct questions, and because there were significant discrepancies in Kane's accounts of the chronology, duration, motivation and severity of his arrests, all matters going to the heart of his asylum application. The IJ's adverse credibility finding is supported by substantial evidence.

Kane presented at least four versions of the dates of his arrests in his asylum application, interview with INS Asylum Officer Cruess, testimony at his removal hearing and brief on appeal to this court. It remains unclear what the actual timing of the arrests was, as well as how long each lasted—ranging from one day or less to three days to one week. The alleged motivations for the arrests also shifted throughout the administrative proceedings. The third arrest, for example, was explained in Kane's asylum application as relating to his party's position on the "Ould Dah" affair, but was linked at the removal hearing to Kane's efforts to "inform the population about another situation in the political party." Kane also stated in his interview with Officer Cruess that this arrest occurred because of his party's position on Israeli nuclear waste being disposed of in Mauritania.

Finally and most importantly, Kane's account of the treatment he received during his detentions is replete with inconsistencies. He did not mention any abuse in his asylum application, and told Officer Cruess that the only mistreatment he experienced was having to spend time in a hot tent, not being allowed to use the bathroom, and being slapped when he tried to negotiate

** The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

his freedom. At his removal hearing, however, Kane for the first time alleged that he was tied to a post, kicked and held for 24 hours without food or drink during his first detention; that he had hot sand poured on his genitals during his second detention; and that he was fed rotten food during his third detention.

Kane's various explanations for these inconsistencies are not compelling. He argues that the injuries he sustained during his detentions are supported by medical records and that memory loss stemming from a thyroid disorder accounts for his erroneous testimony about the arrests' dates. But Kane's medical evidence was introduced very late in the proceedings, consisted of doctors' letters written after his initial removal hearing, was unsupported by in-court statements by any of the doctors and in any case cannot explain the actual conflicts (as opposed to omissions) in Kane's testimony. Kane also contends that he and his lawyer had a conflict of interest, but never specifies what prejudice he suffered as a result or why he decided to retain his lawyer despite the alleged conflict. Finally, Kane claims that he did not mention the burning of his genitals in his interview with Officer Cruess because he was embarrassed to do so in the presence of his wife, and that he failed to cite his beating, tying to a post and forced consumption of rotten food before the removal hearing because he did not deem these incidents sufficiently serious. But Kane's alleged embarrassment does not explain why the burning of his genitals was not mentioned in his asylum application, and as a law graduate Kane should have known that instances of government-sponsored physical violence would be crucial to the evaluation of his asylum claim.

Given the deference that is due to the IJ's adverse credibility finding, *see Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 661–62 (9th Cir.2003), we cannot say that the record compels us to hold that Kane was a credible witness. The IJ gave specific and cogent reasons for his finding, *see Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002), and these reasons are supported by substantial evidence in the record.

The petition for review is **DENIED.**